# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

R. R. FREDEKING, II,

        Plaintiff,

vs.                                          Civil Action No. 3:19-cv-00777

TRIAD AVIATION, INC. a corporation, and
H & H PROPELLER SERVICE, INC. a corporation

        Defendants.

## COMPLAINT

Now comes the plaintiff, R.R. Fredeking, II, by counsel, Mundy & Associates and for his cause of action against the Defendants alleges as follows:

### Jurisdiction and Venue

1. Plaintiff, R. R. Fredeking, II, is and was at all times relevant herein a resident of Cabell County, West Virginia.

2. Both Defendants Triad Aviation, Inc. and H & H Propeller Service, Inc. are corporations and citizens of the State of North Carolina having been organized and existing pursuant to the laws of that State and having their principal places of business therein.

3. The amount in controversy, exclusive of interest and costs, exceeds the sum of $75,000.

4. This Court has subject matter jurisdiction of this matter pursuant to the provisions of 28 U.S.C. §1332.

5. Venue is proper in this district because the Plaintiff resides herein and his cause of action arose in Wayne County, West Virginia.

## Background

6. Defendant Triad Aviation is engaged in the business of selling, servicing, overhauling and maintaining airplanes, including airplane engines and the components thereof and accessories thereto.

7. Defendant, H & H Propeller Service, Inc., is engaged in the business of selling, servicing, overhauling and maintaining airplane propellers, including the components thereof and the accessories thereto.

8. Both Defendants are affiliated entities having the same principal place of business, the same officers, the same registered agents, the same internet web site and the same telephone number. Those Defendants describe themselves as being part of the Triad Aviation family and one of the leading aviation service providers in the United States.

9. Plaintiff is the owner of Piper Malibu N567KC, a single engine aircraft powered by a Continental TSIO 550c engine using a variable pitch Hartzell propeller.

10. Sometime shortly prior to March 11, 2019, relying in part upon the description contained in its internet web site, Plaintiff contacted Triad Aviation by telephone from his office in Huntington, WV to discuss a needed overhaul of the engine and propeller of his Piper Malibu and a required annual inspection including the repair and/or replacement of any components which Triad determined needed repair or replacement.

11. Because of the complexity of the Piper Malibu systems, among other factors considered by the Plaintiff in determining whether to enter into a contract with Triad for the required services was its representation that it had extensive experience with Piper Malibu aircraft and in particular with the overhaul of the Continental TSIO 550c engine. Also, a significant factor to Plaintiff's decision was Triad's commitment that all work would be completed, and the aircraft returned to service within six (6) weeks.

12. Based upon the representations and promises made by Triad Aviation that all service would be performed in a good and workmanlike manner as well as the other terms and conditions communicated by Triad to Plaintiff, including the six (6) week time to complete the work, Plaintiff agreed to allow Triad Aviation to perform the requested work.

13. The formation of this contract between Plaintiff and Triad occurred in Huntington West Virginia, which was the Plaintiff's location at the time he agreed to the terms and conditions communicated by Triad Aviation.

14. In accordance with the agreement of the parties, Plaintiff delivered the Piper Malibu to Triad Aviation on or about March 11, 2019. On that date, Plaintiff authorized the requested work to be performed by Triad Aviation and/or by Triad's affiliate H & H Propeller, as determined by Triad Aviation.

15. Notwithstanding its commitment, Triad failed to complete the work within the agreed upon six-week period. Triad did not complete the work until approximately August 2, 2019.

16. On this date, Plaintiff was notified by email that the repairs had been completed and that the airplane would be released upon payment of the balance by wire transfer or certified funds.

17. On August 15, 2019, the Piper Malibu was delivered to Plaintiff along with certifications from Triad Aviation and H & H Propeller that the aircraft was returned to service in accordance with the applicable Federal Aviation Regulations, and Plaintiff returned to Huntington, WV.

18. Approximately two hours after his departure, while on final approach to the Huntington Tri-State airport, in the airspace over Wayne County West Virginia, the propeller governor failed to perform its essential function, that being to regulate the speed of the propeller and limit the maximum propeller RPM so it would not exceed the rated speed determined by aircraft manufacturer, that being 2500 RPM.

19. The maximum rotational speed capable of being displayed on the factory installed tachometer in a Piper Malibu, is 3000 RPM. The overspeed condition of Plaintiff's aircraft's propeller "pegged" its tachometer at its maximum 3000 RPM display.

20. Although Plaintiff could not determine the exact amount of overspeed because the tachometer remained "pegged" at its 3000 RPM display maximum, based upon the sound of the engine and the indicated airspeed, which was increasing, he believes that the engine and propeller speed exceeded 3300 RPM.

21. According to the engine manufacturer, Teledyne Continental Motors, an engine overspeed that exceeds 3300 RPM is no longer airworthy and must be removed from the aircraft and clearly marked as having suffered excessive overspeed. The Continental service representative must be consulted to determine what actions will be needed to return the engine to an airworthy condition. At a minimum the engine must be completely overhauled and all connecting rods, connecting rod bolts and nuts, and all valve train components must be replaced regardless of inspection limits.

22. According to the propeller manufacturer, Hartzell Propeller, Inc. the Plaintiff's propeller could not be returned to service because the amount of the overspeed was not known.

23. As a direct consequence of the overspeed, Plaintiff has suffered damage including but not limited to the cost of replacing the engine, the cost of replacing the propeller, the cost of services required to remove and reinstall the aforesaid components and return the aircraft to an airworthy condition, and the value of the lost use of the aircraft.

## Count 1 – Breach of Implied Warranties

24. The allegations in the aforesaid paragraphs 1-23 are incorporated by reference.

25. Part of the servicing of Plaintiff's aircraft by the Defendants was the sale by H & H Propeller of a replacement propeller governor.

26. In accordance with the provisions of the Uniform Commercial Code the defendants impliedly warranted that the propeller governor would be merchantable and fit for its intended purpose.

27. The defendants breached this warranty and are liable for the consequential damages resulting therefrom.

## Count 2 – Negligent Repairs

28. The allegations in the aforesaid paragraphs 1-27 are incorporated by reference.

29. According to the propeller manufacturer, it is a required part of servicing or replacing the governor of a Hartzell propeller to flight test the propeller to determine if it is properly adjusted to prevent the propeller from exceeding the maximum permitted RPM.

30. The defendants failed to conduct the required flight test as mandated by Hartzell Propeller, Inc.

31. Had they conducted the required flight test if the governor was not properly adjusted, the problem could have been corrected which would have prevented the overspeed.

32. The Defendants' failure to perform the required flight test constitutes negligence because violates the standard of care applicable to propeller overhauls.

33. As a direct consequence of the aforesaid negligence Plaintiff sustained damages as alleged.

## Count 3 – Breach of Contract

34. The allegations in the aforesaid paragraphs 1-33 are incorporated by reference.

35. The failure to perform the required flight as alleged in the aforesaid Paragraphs constitutes a breach of the promises, representations, and the Defendant's further breached the agreements of the Defendants that all work on Plaintiff's aircraft would be performed in a good and workmanlike manner.

36. As a direct consequence of the aforesaid breach of contract Plaintiff sustained damages as alleged.

**WHEREFORE**, Plaintiff having suffered and who continues to suffer damages as heretofore alleged demands the following:

i) That he be awarded the cost associated with replacing the airplane engine and propeller;

ii) That the Plaintiff be awarded a sum sufficient to compensate him for his loss of use of the airplane until it certified as being airworthy and returned to service.

iii) That the Plaintiff be awarded a sum sufficient to compensate him for the cost of inspection, transportation, care and custody of the engine, propeller and plane;

iv) That the Plaintiff be awarded a sum sufficient to compensate him for his for annoyance, inconvenience;

v) That the Plaintiff be awarded his attorney fees and costs associated with this action;

vi) For pre judgement interest, post judgment interest, attorney fees and costs; and,

vii) For such other and further relief to which this Court may deem appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

R.R. FREDEKING, II

BY COUNSEL

MUNDY & ASSOCIATES
Post Office Box 2986
Huntington, WV 25728
(304) 525-1406

By: _____
William L. Mundy, Esquire
WV State Bar #2678